EAST BATON ROUGE PARISH  C-724254
Filed Oct 05, 2022 8:23 AM      32
Deputy Clerk of Court

**19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE**
**STATE OF LOUISIANA**

SUIT NO.:                                               SECTION:

### KEN WILLIAMS

### VERSUS

**EXXON MOBIL CORPORATION, MOTIVA ENTERPRISES LLC, A D A  C A R B O N
S O L U T I O N S  (V O R T E X  O P E R A T I O N S) L L C,  VALERO REFINING-
NEW ORLEANS LLC, P L A C I D  R E F I N I N G  C O M P A N Y  L L C,
PLACID PIPELINE COMPANY LLC, SHELL OIL COMPANY,
CITGO PETROLEUM CORPORATION, INTERNATIONAL-MATEX
TANK TERMINALS LLC, T A M I N C O  U S  L L C, THE D O W  C H E M I C A L
C O M P A N Y,  MARATHON PETROLEUM COMPANY LP,  C H E V R O N
PIPELINE COMPANY, APACHE OIL COMPANY INC.,
CONOCO PHILLIPS COMPANY, TURNER INDUSTRIES GROUP, LLC,
and STOLTHAVEN NEW ORLEANS, LLC**

FILED: _____        _____
                                            **DEPUTY CLERK**

### ORIGINAL PETITION FOR DAMAGES

The plaintiff, **KEN WILLIAMS,** through his undersigned attorney, files this Original

Petition for Damages:

#### Parties

**1.**

A.    *The Plaintiff is:*

   i.    **KEN WILLIAMS,** (hereinafter "Mr. WILLIAMS") individually and a major residing at

         1030D Sosthene Guilbeau, Breaux Bridge, Louisiana, ST. MARTIN Parish.

B.    *The Defendants are:*

   i.    **EXXON MOBIL CORPORATION** (hereinafter "EXXON"), a foreign corporation

         incorporated in New Jersey and with its principal place of business in Texas, business

         establishment in Louisiana in Baton Rouge, Louisiana, and whose agent for service of

         process is Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, Louisiana

         70802;

   ii.   **MOTIVA ENTERPRISES, LLC** (hereinafter "MOTIVA"), a TEXAS corporation, with

         its  principal business office in TEXAS, and whose mailing address is  P.O. BOX 4540,

1

Certified True and
Correct Copy
CertID: 2022101100348

Generated Date:
10/11/2022 10:53 AM

EXHIBIT "A"

HOUSTON, TEXAS 77210 and whose agent for service of process is CT CORPORATION SYSTEM, 3867 PLAZA TOWER DRIVE, BATON ROUGE, LOUISIANA 70816;

iii. **ADA CARBON SOLUTIONS (VORTEX OPERATIONS), LLC,** (hereinafter "VORTEX") a Colorado Corporation, with its principal business office in Colorado, and whose mailing address is 8051 E. Maplewood Avenue, Greenwood Village, Colorado 80111, and whose agent for service of process is Universal Registered Agents, 3500 Hwy 190, Suite 220, Mandeville, LA 70471;

iv. **VALERO REFINING- NEW ORLEANS, LLC,** (hereinafter "VALERO") a TEXAS Limited Liability Company, with its principal business office in TEXAS, and whose mailing address is Attn: Corporate Tax, PO Box 696000, San Antonio, Texas 78269 and whose agent for service of process is CT CORPORATION SYSTEM, 3867 PLAZA TOWER DRIVE, BATON ROUGE, LOUISIANA 70816;

v. **PLACID REFINING COMPANY, LLC,** (hereinafter "PLACID REFINING") a Delaware Limited Liability Company, whose mailing address is 2101 Cedar Springs Road, Suite 600, Dallas, Texas 75201, and whose agent for service of process is CT CORPORATION SYSTEM, 3867 PLAZA TOWER DRIVE, BATON ROUGE, LOUISIANA 70816;

vi. **PLACID PIPELINE COMPANY, LLC,** (hereinafter "PLACID PIPELINE") a Delaware Limited Liability Company, whose mailing address is 2101 Cedar Springs Road, Suite 600, Dallas, Texas 75201, and whose agent for service of process is CT CORPORATION SYSTEM, 3867 PLAZA TOWER DRIVE, BATON ROUGE, LOUISIANA 70816;

vii. **SHELL OIL COMPANY** (hereinafter "Shell"), a Delaware

2

Certified True and Correct Copy
CertID: 2022101100348

Generated Date:
10/11/2022 10:53 AM

Corporation, with its Mailing address being 150 N. Dairy Ashford, Houston, Texas 77079, and whose registered agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

viii. **CITGO PETROLEUM CORPORATION** (hereinafter "CITGO") a Delaware Corporation, whose principal place of business being located in Texas, having a principal business establishment in Lake Charles, Louisiana, and whose registered agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

ix. **INTERNATIONAL-MATEX TANK TERMINALS, LLC** (hereinafter "IMTT") a foreign corporation, with its principal place of business in North Carolina, and whose principal business establishment is located at 400 POYDRAS STREET, SUITE 3000, New Orleans, Louisiana 70130, and whose registered agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816;

x. **TAMINCO US, LLC**, St. Gabriel Plant, (hereinafter "EASTMAN") a Delaware Corporation, with its local principal business office being located at 200 South Wilcox Drive, Kingsport, Tennessee 37660, and whose registered agent for service of process is United Agent Group, 1070-B West Causeway Approach, Mandeville, Louisiana 70471;

xi. **THE DOW CHEMICAL COMPANY**, (hereinafter "DOW"),a foreign company, domiciled in Delaware, with their local Registered Office being at 3867 Plaza Tower Drive, Baton Rouge, LA 70816, and whose reg. agent for service of process being CT CORPORATION SYSTEM, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

3


**Certified True and Correct Copy**
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

xii.   **MARATHON PETROLEUM COMPANY, LP** (hereinafter "MARATHON") a foreign company, authorized to do and doing business in Louisiana, domiciled in Delaware, with its principal place of business in Ohio, its principal place of business in Louisiana in East Baton Rouge Parish, and whose registered agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

xiii.  **CHEVRON PIPE LINE COMPANY**, in Venice, Louisiana, (hereinafter "CHEVRON PIPELINE") A Delaware Company, with its Mailing address being 6001 Bollinger Canyon Road, San Ramon, California 94583, and whose registered agent for service of process is The Prentice-Hall Corporation System, Inc., 501 Louisiana Avenue, Baton Rouge, LA 70802 (the same having been previously known as "CAL-KY PIPE LINE COMPANY";

xiv.   **APACHE OIL COMPANY, INC.**, in Johnson Bayou, (hereinafter "APACHE") a Delaware Corporation, with its local principal business establishment being 5615 Corporate Blvd, Suite 400B, Baton Rouge, Louisiana, and whose registered agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

xv.    **CONOCO PHILLIPS COMPANY**, in Westlake, (hereinafter "CONOCOPHILLIPS") a Delaware Company, with its principal business office located at 925 North Eldridge Parkway, Houston, Texas 77079, and whose registered agent for service of process is United States Corporation Company, 501 Louisiana Avenue, Baton Rouge, Louisiana 70802;

xvi.   **TURNER INDUSTRIES GROUP, LLC** (hereinafter "TURNER"), a domestic corporation, with its principal place of business located at 8687 United Plaza Boulevard, Baton Rouge, Louisiana 70809 and at all times material hereto, licenses to do and doing

4


**Certified True and Correct Copy**
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

business in the State of Louisiana whose registered agent for service of process is John H. Fenner, III, 8687 United Plaza Boulevard, Baton Rouge, Louisiana 70809; and

xvii.    **STOLTHAVEN NEW ORLEANS, LLC ("STOLTHAVEN")**, a domestic corporation authorized to do and doing business in Louisiana with its principal business office in BRAITHWAITE, Louisiana, and whose agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

## JURISDICTION AND VENUE

### 2.

Plaintiff specifically alleges that exposure to benzene and benzene containing products, in combination with other benzene-containing products, caused his benzene-related injuries including but not limited to CHRONIC LYMPHOCYTIC LEUKEMIA (CLL), which Plaintiff was first diagnosed with on September 30, 2022. Venue is proper for the Defendants and is proper for all Defendants pursuant to Louisiana Code of Civil Procedure Articles 42(2), 42(4) and 73. Defendants, **EXXON, MOTIVA, VORTEX OPERATIONS, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS, and CARGILL** are foreign corporations with their principal business establishment in Louisiana in East Baton Rouge Parish, making venue proper pursuant to La. C.C.P. art. 42(4).    Furthermore, Defendants **TURNER, and STOLTHAVEN** are domestic corporations incorporated in Louisiana with their principal office in East Baton Rouge Parish.  Plaintiff, Ken Williams was exposed to products, distributed, manufactured, sold, installed or removed by the above-referenced Defendants. Venue is proper in East Baton Rouge Parish because the Defendants are doing business in East Baton Rouge Parish. Plaintiffs specifically alleges that these products, in combination with other benzene-containing products, caused his CHRONIC LYMPHOCYTIC LEUKEMIA.  Thus, venue is proper for these Defendants, as joint and solidary obligors and is proper for all Defendants pursuant to Louisiana Civil Code of Procedure Articles 42 and 73.

## BACKGROUND

### 3.

5



**Certified True and Correct Copy**
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Mr. WILLIAMS worked from 2000 till present for **Petroleum Service Corporation ("PSC"), BILFINGER, INC. ("BIS") KC and Sons ("KC") and ECS of Reserve ("ECS")** from 2000 till present as a Tankerman, Hydroblaster, sandblaster, and painter **EXXON, MOTIVA, VORTEX OPERATIONS, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, AND STOLTHAVEN.** While working at/or around these businesses, MR. WILLIAMS had hands on exposure to benzene. In addition to the aforementioned jobs wherein MR. WILLIAMS came into contact with benzene, he also cleaned his hands with gasoline. MR. WILLIAMS would also frequently and regularly come into contact with benzene and benzene-containing products from substances such as: crude oil, gasoline, diesel, pure benzene, and natural gas.

4.

MR. WILLIAMS was employed by PSC (from 2006-2007 and 2021-present), BIS (from 2007-2015), KC (from 2000-2004), and ECS (from 2004-2006), a contractor as a tankerman, hydroblaster, sandblaster or painter from 2000 till present, wherein he was also exposed to high levels of benzene from products manufactured, distributed, or sold by the defendants and contracted workers performing various tasks throughout the units within the normal operations and while new construction, add-ons, and turnarounds occurred at these facilities. He was exposed to hazardous benzene, toluene, xylene, gasoline, crude oil and mineral spirits among other benzene containing substances.

5.

MR. WILLIAMS was diagnosed with CHRONIC LYMPHOCYTIC LEUKEMIA on September 30, 2022 due to his exposure to benzene and benzene-containing products. He filed this suit within one year or learning of the connection between his CLL and benzene.

6.

6

*Julia Gray*


Certified True and
Correct Copy
CertID: 2022101100348

Generated Date:
10/11/2022 10:53 AM

MR. WILLIAMS was significantly exposed to benzene and benzene-containing products as a result of the acts and/or omissions of the Defendants, which were a substantial contributing cause to MR. WILLIAMS's CHRONIC LYMPHOCYTIC LEUKEMIA.

7.

While working at/or around **EXXON, MOTIVA, VORTEX OPERATIONS, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, AND STOLTHAVEN** for contractors such as PSC (from 2006-2007 and 2021-present), BIS (from 2007-2015), KC (from 2000-2004), and ECS (from 2004-2006), as a tankerman, hydroblaster, sandblaster, and painter, MR. WILLIAMS was exposed daily to high levels of benzene while performing his duties as a tankerman, hydroblaster, sandblaster, and painter among other tasks performed during regular operations and during add-ons, tie-ins, expansions, turnarounds, and new construction jobs at the defendants' facility. He was also exposed to high levels of benzene from products manufactured, distributed, or sold by the defendants.

8.

When working as a tankerman, hydroblaster, sandblaster, and painter at **EXXON, MOTIVA, VORTEX OPERATIONS, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, AND STOLTHAVEN** MR. WILLIAMS worked with and near **Turner Industries Group, LLC** and its predecessors including Nichols Construction, International Maintenance Corporation (IMC) and Harmony, LLC. **Turner Industries Group, LLC** has a history of exposing employees and bystanders of different trades to benzene and benzene-containing products.

9.

From 2000 through present, MR. WILLIAMS would regularly come into contact with benzene or benzene-containing products (e.g., toluene, xylene, benzene, and Liquid Wrench.)

7



**Certified True and Correct Copy**
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

manufactured, sold, distributed, used by defendants, **EXXON, MOTIVA, VORTEX OPERATIONS, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, AND STOLTHAVEN,** which caused his injuries including CLL.

### 10.

At all material times herein, defendants were manufacturers, distributors, sellers, suppliers, or large industrial consumers of benzene or benzene-containing products.

### 11.

MR. WILLIAMS sustained tissue damage shortly after each exposure to benzene, resulting in distinct bodily injuries in each year from approximately 2000 through present. As a direct and proximate result of exposure to benzene and products containing high levels of benzene, MR. WILLIAMS has suffered injuries, including but not limited to CLL, physical damage, severe physical and mental pain, fear of future disease processes, disability, medical expenses, lost wages, and loss of enjoyment of life. He will continue to suffer these damages in the future.

### 12.

The health hazards of benzene have been recognized for over one hundred years. Benzene has been recognized as a carcinogen known to cause leukemia. By the end of 1948, it was widely known to those in defendants' industry in the United States, as well as the named defendants or their predecessors, that exposure to benzene could cause a myriad of ill health effects including such diseases as leukemia, multiple myeloma, chronic lymphocytic leukemia, lymphoma and other blood disorders.

### 13.

Through industry and medical studies unknown to plaintiffs, the defendants knew or should have known of the health hazards inherent in the products they manufactured, distributed, sold, supplied, owned, transported, or used. The actions or inactions of the defendants constitute gross negligence and demonstrate a reckless disregard for the rights and safety of others.

### 14.

CLL is a malignant disease that affects the blood and bone marrow.

8



**Certified True and Correct Copy**
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

**15.**

The development of CLL as a result of chronic benzene exposure has been well documented by scientists, and death resulting from leukemia has been associated with benzene exposure. Scientists have also linked Multiple Myeloma, CHRONIC LYMPHOCYTIC LEUKEMIA (CLL), aplastic anemia, pancytopenia, cytopenias, myelofibrosis, and polycythemia vera to benzene exposure.

**16.**

Practically all of the adverse chronic effects of exposure to benzene and its oxidation products are a result of their influence on the blood forming system. The adverse impact of exposure to levels of benzene has been known to range from less than five years to in excess of thirty years.

**17.**

Exposure to benzene is usually through inhalation, although skin contact also occurs. Chronic benzene poisoning results from repeated or continuous exposure to relatively low concentrations of benzene vapors.

**18.**

Long-term benzene exposure may also adversely impact marrow and bone production. Breathing benzene can cause drowsiness, dizziness, rapid heart rate, headaches, tremors, confusion, and unconsciousness. Breathing very high levels of benzene can also result in death. Eating or drinking foods containing high levels of benzene can cause vomiting, irritation of the stomach, dizziness, sleepiness, convulsions, rapid heart rate, and death.

**19.**

In the September 1948 edition of the American Petroleum Institute, Toxicological Review, the authors recommended precautionary measures for workers who are exposed to benzene. Furthermore, they stated that benzene use was extensive in the petroleum industry with the greatest amount of benzene blended into motor gasoline. As of 1948, the American Standards Association and most states had set an arbitrary limit of 100 ppm as the maximum permissible benzene concentration for workers exposed to this substance during an 8-hour day. In as much as the body develops no tolerance to benzene, and as there is a wide variation to individual susceptibility, it is

9


**Certified True and Correct Copy**
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

generally considered that the only absolute safe concentration for benzene is zero. The concentration of benzene vapor in the air should be checked regularly in situations where excessive exposures are apt to be encountered.

20.

The safety measures necessary for the prevention of benzene poisoning are primarily those designed to prevent the inhalation of benzene vapor. Ventilation should be designed to prevent toxic concentrations of the vapor from reaching the breathing zone of individuals who may be potentially exposed. Individuals who must be exposed to benzene vapor should be rotated to reduce their exposure time to a minimum. When excessive concentrations are unavoidably encountered in operations—such as the cleaning of tank cars, vats, and storage tanks—air masks should be employed. Skin contact and possible dermatitis from benzene should be avoided entirely if possible; but, if the hands must contact the solvent, then neoprene gloves or protective creams should be used.

21.

The defendants **EXXON, MOTIVA, VORTEX OPERATIONS, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, AND STOLTHAVEN,** knew or should have known about the causal relationship between benzene and cancer-related illnesses, and knew or should have known the benzene and benzene containing products to which MR. WILLIAMS was exposed contained dangerous levels of benzene which posed a health hazard to users and those in close proximity to these products. The defendants failed to warn MR. WILLIAMS about the health hazards associated with benzene.

22.

The defendants are guilty of negligence, gross-negligence, strict liability, and fault identified throughout this complaint, more specifically as follows:

**PREMISE LIABILITY CLAIMS AGAINST EXXON, MOTIVA, VORTEX OPERATIONS, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS,**

10

Certified True and
Correct Copy
CertID: 2022101100348

Generated Date:
10/11/2022 10:53 AM

**MARATHON, TURNER, AND STOLTHAVEN**

### 23.

Defendant, **EXXON**, has been the operator and/or the manager and/or the owner and occupier of its BATON ROUGE facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's Baton Rouge facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

### 24.

Defendant, **MOTIVA**, has been the operator and/or the manager and/or the owner and occupier of its NORCO facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's Norco facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

### 25.

Defendant, **VORTEX OPERATIONS**, has been the operator and/or the manager and/or the owner and occupier of its facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

11




Certified True and
Correct Copy
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

**26.**

Defendant, **VALERO**, has been the operator and/or the manager and/or the owner and occupier of its NORCO facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

**27.**

Defendant, **PLACID REFINING**, has been the operator and/or the manager and/or the owner and occupier of its PORT ALLEN facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

**28.**

Defendant, **PLACID PIPELINE**, has been the operator and/or the manager and/or the owner and occupier of its facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

**29.**

Defendant, **SHELL**, has been the operator and/or the manager and/or the owner and occupier of its NORCO facility and in custody of the facility during the relevant time period. The

12



Certified True and
Correct Copy
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

facility was defective in that the benzene and benzene containing materials in the facility created

an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR.

WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at

the Defendant's facility. The defective condition of the facility was a proximate cause of MR.

WILLIAMS's benzene related injuries and damages.

### 30.

Defendant, **CITGO**, has been the operator and/or the manager and/or the owner and

occupier of its LAKE CHARLES facility and in custody of the facility during the relevant time

period. The facility was defective in that the benzene and benzene containing materials in the

facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the

premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he

was an invitee at the Defendant's facility. The defective condition of the facility was a proximate

cause of MR. WILLIAMS's benzene related injuries and damages.

### 31.

Defendant, **IMTT,** has been the operator and/or the manager and/or the owner and

occupier of its ST. ROSE facility and in custody of the facility during the relevant time period.

The facility was defective in that the benzene and benzene containing materials in the facility

created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR.

WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at

the Defendant's facility. The defective condition of the facility was a proximate cause of MR.

WILLIAMS's benzene related injuries and damages.

### 32.

Defendant, **DOW,** has been the operator and/or the manager and/or the owner and occupier

of its Plaquemine facility and in custody of the facility during the relevant time period. The facility

was defective in that the benzene and benzene containing materials in the facility created an

unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR.

13



Certified True and
Correct Copy
CertID: 2022101100348

*Julia Gray*

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

### 33.

Defendant, **MARATHON** has been the operator and/or the manager and/or the owner and occupier of their GARYVILLE facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

### 34.

Defendants, **EASTMAN** have been the operators and/or the managers and/or the owners and occupiers of their Geismar facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

### 35.

Defendant, **CHEVRON PIPELINE,** has been the operator and/or the manager and/or the owner and occupier of its facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages. MR. WILLIAMS was exposed to benzene and

14

Certified True and
Correct Copy
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

36.

**Blank.**

37.

Defendant, **APACHE,** has been the operator and/or the manager and/or the owner and occupier of its Johnson Bayou facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises, where he was present. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

38.

Defendant, **CONOCO PHILLIPS,** has been the operator and/or the manager and/or the owner and occupier of its Lake Charles facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

39.

Defendant, **MARATHON,** has been the operator and/or the manager and/or the owner and occupier of its Garyville facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at

Certified True and
Correct Copy
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

**40.**

**Blank.**

**41.**

Defendant **STOLTHAVEN,** has been the operator and/or the manager and/or the owner and occupier of its Braithwaite facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

**42.**

Defendants, EXXON, MOTIVA, VORTEX OPERATIONS, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, AND STOLTHAVEN are liable to MR. WILLIAMS for their failure to exercise reasonable care to protect MR. WILLIAMS from the foreseeable dangers associated with exposure to benzene. The Defendants, as the premise operator and/or manager and/or owner and occupier, and/or custodian, had a non- delegable duty to keep the premises safe for invitees. The Defendants knew or should have known of the unreasonable risk of harm inherent in exposure to benzene and benzene containing materials but failed to protect MR. WILLIAMS from said risk or harm. EXXON, MOTIVA, VORTEX OPERATIONS, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, AND STOLTHAVEN failed to warn and to exercise reasonable care when MR. WILLIAMS entered its premise. EXXON, MOTIVA, VORTEX OPERATIONS, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN,

16

Certified True and
Correct Copy
CertID: 2022101100348

Generated Date:
10/11/2022 10:53 AM

CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, AND STOLTHAVEN managed the benzene containing products, performed maintenance.

43.

Exposure to benzene from the defendants' respective products and/or products under their care, custody, and control resulted from the normal, foreseeable, and intended use of the products, without substantial change in the condition in which the defendants sold or supplied these products.

44.

The defendants' respective products were defective, presented an unreasonable risk of harm, and were unreasonably dangerous under normal use at the time the products left the respective defendants' control. MR. WILLIAMS was an intended and foreseeable user of the alleged defective products, and defendants could reasonably have anticipated the losses to the plaintiffs.

45.

The defects in the defendants' respective products include, but are not limited to, the following:

a.  inherent characteristics (known to the defendants) that gave the products such a potential for causing health problems as to render the products unreasonably dangerous per se;

b.  lack of warnings or lack of sufficient warnings of the inherently dangerous properties of the products when used in the fashion in which they were anticipated or should have been anticipated being used;

c.  lack of warnings or lack of sufficient instructions for eliminating the health risks inherent in the use of the products;

d.  lack of sufficient inspections by the defendants of their products to ensure that such products contained sufficient warnings of the dangerous properties of the products;

e.  lack of reasonable inspections by the defendants of their products to ensure that

17



**Certified True and Correct Copy**
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

such products contained sufficient instructions for eliminating or minimizing the

health risks inherent in the use of the products;

f.    lack of tests or lack of sufficient tests to determine the effect of benzene vapors

on intended users and bystanders; and

g.    other acts which may be revealed at the trial of this matter.

## 46.

The defendants used and sold products with conscious disregard for the safety of users of

the products and other persons who might be injured thereby.

## 47.

As a result of the unreasonably dangerous condition and composition of the benzene-

containing products manufactured, distributed, and/or sold by defendants **EXXON, MOTIVA,**

**VORTEX OPERATIONS, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO,**

**IMTT, DOW, EASTMAN, CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS,**

**MARATHON, TURNER, AND STOLTHAVEN,** wherein MR. WILLIAMS inhaled benzene fumes

and other harmful substances emitted by the normal use of the products. The defective condition

of the defendants' products proximately caused or substantially contributed to plaintiff's injuries

or damages as described elsewhere herein.

## 48.

Defendants, **EXXON, MOTIVA, VORTEX OPERATIONS, VALERO, PLACID**

**REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON**

**PIPELINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, AND**

**STOLTHAVEN,** are liable for the damages caused by their unreasonably dangerous products

because (1) the product is unreasonably dangerous in construction and composition, (2) the product

is unreasonably dangerous in design, and (3) the product is unreasonably dangerous because an

adequate warning about the product was not provided.

## 49.

The Defendants **EXXON, MOTIVA, VORTEX OPERATIONS, VALERO, PLACID**

18



**Certified True and
Correct Copy**
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, AND STOLTHAVEN breached their respective duties, which they owed to MR. WILLIAMS to exercise proper care in manufacturing and selling their respective products. More specifically, they breached the following duties:

   a.  to design their products to contain available and suitable products other than benzene;

   b.  to sell benzene-free products;

   c.  to select materials other than benzene for inclusion into their products;

   d.  to fully test their respective products for health risks associated with the normal and intended use of their products;

   e.  to fully instruct and warn users and bystanders in the uses of their respective products so as to eliminate or reduce the health hazards associated with their normal and intended uses;

   f.  to fully warn foreseeable users and bystanders as additional medical knowledge became available concerning the health hazards associated with their products;

   g.  to recall their products upon discovering, or at the time they should have discovered, the health hazards associated with those products;

   h.  to inspect fully and adequately the design, selection, testing, instruction and warnings that should have accompanied the sale of such products;

   i.  to refrain from negligently misrepresenting the safety and health risks of the products they sold;

   j.  to inquire about or investigate the safety and health risks of the products they sold;

   k.  to research, study and be aware of medical and scientific studies concerning the health hazards of benzene; and

   l.  any other acts which may be revealed at the trial of this matter.

**50.**

   As a direct and proximate result of the defendants' breach of their respective duties, the plaintiff has sustained injuries, damages, and losses. The defendants' breaches of their duties

Certified True and
Correct Copy
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

directly and proximately caused the injuries to the plaintiff.

### NEGLIGENCE AND GROSS NEGLIGENCE BY EXXON, MOTIVA, VORTEX OPERATIONS, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, AND STOLTHAVEN

**51.**

Defendants are liable to Plaintiff for the damages caused by their negligence pursuant to La. C.C. 2315 provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

**52.**

EXXON, MOTIVA, VORTEX OPERATIONS, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, AND STOLTHAVEN have a duty to act with reasonable care to avoid injury to another. Defendants were the premise owners during the time periods identified above, and therefore had a duty to provide a safe workplace during these periods of employment. Defendants breached their duties to MR. WILLIAMS in the manner described above EXXON, MOTIVA, VORTEX OPERATIONS, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, AND STOLTHAVEN substandard conduct, described above, caused MR. WILLIAMS' exposure to benzene and were each a substantial factor in contributing to Plaintiff's injuries.

**53.**

In the course of his work at EXXON, MOTIVA, VORTEX OPERATIONS, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, AND STOLTHAVEN , MR. WILLIAMS was exposed to benzene and benzene containing products at all material times which were owned and/or operated and/or supervised by EXXON, MOTIVA, VORTEX OPERATIONS,

20


Certified True and
Correct Copy
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

**VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, AND STOLTHAVEN** failing to provide adequate warnings, including placards and signs, physical examinations, safety equipment, ventilation, and breathing apparatus, where such was necessary in order to prevent MR. WILLIAMS from being harmed by exposure to benzene in the environment where MR. WILLIAMS was required to work;

    a.    failing to make certain that contract workers including MR. WILLIAMS, were provided a safe working environment free from benzene exposure;

    b.    negligently or intentionally failing to comply with the applicable State and Federal regulations regulating workplace exposure to benzene;

    c.    failing to provide MR. WILLIAMS with a safe place to work;

    d.    failing to conduct adequate industrial hygiene monitoring of workers such as MR. WILLIAMS; and

    e.    any and all other acts of negligence or other acts of fault which may be proven at trial.

54.

**EXXON, MOTIVA, VORTEX OPERATIONS, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, AND STOLTHAVEN** , or their predecessors-in- interest, subsidiaries, or successors-in-interest, individually and/or in concert, breached their duty of ordinary care to MR. WILLIAMS by negligently performing duties owed individually and/or delegated to them, directly and proximately causing the benzene related injuries, illnesses, and disabilities of MR. WILLIAMS. The Defendants and/or its predecessors-in-interest, subsidiaries, or successors-in-interest were negligent in one, some and/or all of the following respects, among others, the same being the proximate cause of MR. WILLIAMS' benzene related injuries, illnesses and disabilities:

    a.    in failing to provide adequate safety equipment;

    b.    in failing to protect MR. WILLIAMS from any benzene exposure;

    c.    in failing to provide MR. WILLIAMS sufficient personal protective equipment, safety devices and work procedures intended to prevent or

21



Certified True and
Correct Copy
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

substantially eliminate the effects of benzene exposure;

d.    in failing to supervise or insure compliance with safety guidelines concerning exposure to benzene or benzene containing products;

e.    in failing to use or misusing equipment and instrumentalities within their control which were intended to minimize MR. WILLIAMS' exposure to benzene;

f.    in failing to properly perform safety inspections of MR. WILLIAMS' workplace;

g.    in failing to properly perform engineering services, consulting and direction of work involving the installation, removal, maintenance and/or disturbance of equipment at MR. WILLIAMS' work sites;

h.    in failing to comply with applicable State and Federal regulations regarding workplace exposure to benzene; and in failing to properly perform or direct the opening of equipment that contained benzene at MR. WILLIAMS' work sites; and

i.    in negligently failing to disclose, warn or reveal medical and safety information to MR. WILLIAMS regarding the hazards of benzene.

The negligence and substandard conduct of Defendants was a substantial factor and contributed in causing MR. WILLIAMS' benzene related injuries and damages.

**NEGLIGENCE AND GROSS NEGLIGENCE BY TURNER**

**55.**

**Turner Industries Group, LLC** and its predecessors including, Nichols Construction, IMC and Harmony, LLC ("herein after Turner") was negligent in the construction, and design of new construction jobs and turnaround work performed at **defendants' facilities** from 2000 through present. At all relevant times, **Turner** has been either the contractor or subcontractor of construction work performed at the respective facility and in custody and control of the work performed at the facility. The activities conducted by **Turner** included, but were not limited to, the demolition, construction, rebuilding, renovations, additions tie-ins and expansions of the facilities for the premise owners.

**56.**

The construction was defective in that the benzene and benzene-containing materials released in the facilities created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene-containing materials while he was an invitee at the premise Defendants' facilities. The defective condition

22



Certified True and
Correct Copy
CertID: 2022101100348

of the construction at the facilities was a proximate cause of MR. WILLIAMS' benzene related injuries and damages.

57.

Turner knew or should have known of the unreasonable risk of harm inherent in exposure to benzene and benzene containing materials, but failed to protect MR. WILLIAMS from said risk of harm. The Defendants' failure to protect MR. WILLIAMS from known and/or foreseeable dangers constitutes negligence. Said negligence was a proximate cause of MR. WILLIAMS' benzene related injuries and damages.

STRICT LIABILITY AGAINST TURNER

58.

MR. WILLIAMS' CLL was caused by an unreasonably defective thing that was within the defendants' care, custody or control, namely, benzene and benzene-containing products. Turner, as successor in interest to Nichols Construction, IMC and Harmony, is strictly liable for MR. WILLIAMS' exposure to benzene because the construction jobs at defendants' facilities that released benzene to which he was exposed were in the care and custody of Turner. The benzene and benzene- containing products released on the construction jobs at defendants' facilities which exposed MR. WILLIAMS were defective or were in a condition which created an unreasonable risk of harm and MR. WILLIAMS' CLL was caused by the defective condition.

59.

Additionally, as construction contractors at defendants' facilities and other facilities where MR. WILLIAMS was exposed to benzene, Turner is strictly liable for the Plaintiffs damages arising from the custody or guard of the construction jobs. Because Turner caused MR. WILLIAMS to suffer benzene exposures from 2000 through present at defendants' facilities while former Article 2317 of Louisiana Civil Code was still in effect, it governs here. Pursuant to La. Civil Code art. 2317:

> Art. 2317. Acts of others and of things in custody.
> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or

23



Certified True and
Correct Copy
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

of the things which we have in our custody..."

Pursuant to La. Civil Code Art. 2317.1. **Turner** is liable for MR. WILLIAMS' injuries.

Plaintiff's injuries were caused by a vice or defective thing; namely, the benzene containing

products released in the construction jobs that were under the care, custody, supervision, and

control of defendants (as described above).

60.

**Turner** negligently performed the foregoing activities in the following non-exclusive

particulars:

a. By creating a work environmental laden with benzene and an unhealthy and unsafe place for MR. WILLIAMS to work;

b. By failing to provide warnings or adequate warnings, to MR. WILLIAMS of the dangers and risks posed by the benzene release in the atmosphere in which MR. WILLIAMS worked, in disregard of the need for correct, adequate, and/or appropriate safety equipment, in disregard of critical medical and safety information regarding benzene hazards in general and of hazards at the jobsite in particular; and of the hazards created by Defendant's activities;

c. By failing to test, or adequately test, the work environment for the presence of toxic, hazardous and carcinogenic chemicals, particularly benzene;

d. By failing to formulate policies and adopt plans, procedures, and supervision necessary for the adequate protection of persons, such as MR. WILLIAMS who came into contact with benzene as a result of Defendant's activities;

e. By recklessly concealing from MR. WILLIAMS and negligently failing to provide medical and safety information to MR. WILLIAMS regarding the safety and health risk associated with benzene and benzene containing products;

f. By failing to adopt and/or failing to enforce safety rules after such safety rules were actually adopted;

g. By failing to keep abreast of the scientific and engineering knowledge regarding the danger of, and protection against, occupational exposure to benzene;

h. By failing to properly supervise and/or monitor their work areas for compliance with safety regulations;

i. By failing to supervise their operation and the operations of their subcontractors;

j. By commencing and continuing operations, which were under their control and supervision when they knew or should have known that such operations would cause MR. WILLIAMS and co-employees to be exposed to benzene without protection, on a daily basis;

k. By applying, demolishing, displacing, disturbing, fabricating, installing, removing, repairing, replacing, and tearing out products that Defendants knew, or to the exercise of reasonable diligence should have known, were unreasonably dangerous, or unreasonably dangerous per se;

l. By not providing safety instructions or sufficient safety instructions for eliminating or reducing the health risks associated with their activities; and

m. By conducting their activities through such other negligent acts or omissions, as may be revealed I discovery and/or at trial.

61.

24



**Certified True and Correct Copy**
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

The foregoing negligent acts of **Turner** were a cause-in-fact and proximate cause of the Plaintiffs injuries and damages

### 62.

Additionally, the contractor defendant is liable for the acts of their subcontractors under the doctrine of respondent superior and Louisiana Civil Code Article 2320.

### Contra Non Valentum

### 63.

The prescriptive period does not start until the plaintiff knew or should have known that the plaintiffs CLL was caused by benzene. Here, the results of the plaintiff's exposure to benzene was inherently undiscoverable. The cancer took years to develop.

MR. WILLIAMS did not learn of his diagnosis of CLL until October 25, 2021, and did not learn of a possible connection between the benzene he was exposed to and his illness until after October 25, 2021. The prescriptive period did not start until after October 25, 2021, when the plaintiff learned about the cause of his CLL. The defendants concealed, negligently misrepresented, and misrepresented the health hazards of benzene from the plaintiff, which led Plaintiff to a course of inaction in the enforcement of his right by reason of concealment or misrepresented conduct on the part of the defendants or because of their failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights.

### DAMAGES

### Compensatory Damages by All Defendants

### 64.

As a result of the acts and omissions of the defendants, the plaintiff is entitled to recover money damages, both past and future, for all elements of damages allowed by Louisiana law. These damages are, without limitation:

    a.  Past, present, and future physical pain and suffering;
    b.  Past, present, and future mental anguish and emotional distress;
    c.  Disfigurement and embarrassment;
    d.  Physical Impairment;
    e.  Past and future earnings, fringe benefits, and retirement benefits;

**Certified True and Correct Copy**
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

f. Loss of earning capacity;

g. Physical and mental disabilities;

h. Past, present, and future medical care, convalescence, mental and physical therapy and all other health care expenses;

i. Loss of enjoyment of life;

j. Fear of cancer and other diseases;

k. Expenses to train, educate or otherwise enable the plaintiffs to be gainfully employed;

l. Interests and costs;

m. any other damages to be revealed at the trial of this matter.

## 65.

All of the allegations contained in the previous paragraphs are realleged herein. Each of the defendants knew or should have known that its individual actions would combine to cause the injuries of the plaintiff. The actions of each of the defendants are a proximate cause of plaintiff's injuries. As a result, all defendants are jointly and solidarily liable for the damage caused by their combined actions.

**WHEREFORE,** the plaintiff, **KEN WILLIAMS,** prays for judgment in favor of Plaintiff and against **EXXON, MOTIVA, VORTEX OPERATIONS, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPELINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, AND STOLTHAVEN** be duly cited to appear and answer this Amended Petition for damages and that after due proceedings are had there be judgment rendered herein in the Plaintiffs favor and against the defendants, jointly, severally, and in solido, for an amount reasonable under the premises, for all costs of these proceedings, and for all general and equitable relief to which Plaintiff is entitled under the law.

Respectfully Submitted,

Tregg C. Wilson (#27328)
Attorney for Petitioner
11745 Bricksome Avenue, Suite A-4
Baton Rouge, LA 70816
(225) 663-1900
tregg@wilsonandwilson.org

26


Certified True and
Correct Copy
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

**SHERIFF: PLEASE SERVE DEFENDANTS:**

**1. ExxonMobil Corporation**
Through its Agent for Service of Process
Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, Louisiana 70802.

**2. MOTIVA ENTERPRISES, LLC**
Through their registered agent for service of process:
CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

**3. ADA CARBON SOLUTIONS LLC**
Through their reg. agent for service of process:
Universal Registered Agent, 3500 Hwy 190, Suite 220, Mandeville, LA 70471;

**4. VALERO REFINING- NEW ORLEANS, LLC**
Through their registered agent for service of process:
CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

**5. PLACID REFINING COMPANY, LLC**
Through their registered agent for service of process:
CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

**6. PLACID PIPELINE COMPANY, LLC**
Through their registered agent for service of process:
CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

**7. SHELL OIL COMPANY**
Through their registered agent for service of process:
CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

**8. CITGO PETROLEUM CORPORATION**
Through their registered agent for service of process:
CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

**9. INTERNATIONAL-MATEX TANK TERMINALS, LLC**
Through their registered agent for service of process:
CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816;

**10. TAMINCO US, LLC**
Through their Reg. Agent for service of process:
United Agent Group, 1070-B West Causeway Approach, Mandeville, Louisiana 70471

**11. The DOW Chemical Company**
Through its Agent for Service of Process
CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816

**12. MARATHON PETROLEUM LP**
Through their registered agent for service of process:
CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

27



Certified True and
Correct Copy
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

13.    **CHEVRON PIPE LINE COMPANY**
Through their registered agent for service of process:
The Prentice-Hall Corporation System, Inc.
501 Louisiana Avenue, Baton Rouge, LA 70802

14.    **APACHE OIL COMPANY, INC.**
Through their registered agent for service of process:
CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

15.    **CONOCO PHILLIPS COMPANY**
Through their registered agent for service of process:
United States Corporation Company, 501 Louisiana Avenue,
Baton Rouge, Louisiana 70802;

16. **TURNER INDUSTRIES GROUP, LLC**
Through their registered agent for service of process:
John H. Fenner, III, 8687 United Plaza Boulevard, Baton Rouge, Louisiana 70809; and

17. **STOLTHAVEN NEW ORLEANS, LLC**
Through their reg. agent for service of process:
CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

28

Certified True and
Correct Copy
CertID: 2022101100348

East Baton Rouge Parish
Deputy Clerk Of Court

Generated Date:
10/11/2022 10:53 AM

EAST BATON ROUGE PARISH
Filed May 16, 2023 1:02 PM
Deputy Clerk of Court

C-724254
32

**19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE**
**STATE OF LOUISIANA**

SUIT NO.:   C-724254                                          SECTION: 32

**KEN WILLIAMS**

**VERSUS**

**EXXON MOBIL CORPORATION, MOTIVA ENTERPRISES LLC, A D A CARBON SOLUTIONS (RED RIVER) LLC, VALERO REFINING-NEW ORLEANS LLC, PLACID REFINING COMPANY LLC, PLACID PIPELINE COMPANY LLC, SHELL USA, INC., CITGO PETROLEUM CORPORATION, INTERNATIONAL-MATEX TANK TERMINALS LLC, TAMINCO US LLC, THE DOW CHEMICAL COMPANY, MARATHON PETROLEUM COMPANY LP, CHEVRON PIPE LINE COMPANY, APACHE OIL COMPANY INC., CONOCO PHILLIPS COMPANY, TURNER INDUSTRIES GROUP, LLC, THIRD COAST OFFSHORE SEACREST, LLC, BOARDWALK PETROCHEMICAL PIPELINE, LLC, AND STOLTHAVEN NEW ORLEANS, LLC**

FILED: _____          _____
                                                           **DEPUTY CLERK**

## PLAINTIFF'S FIRST AMENDED PETITION FOR DAMAGES

The plaintiff, KEN WILLIAMS, through his undersigned attorney, files this First

Amended Petition for Damages, pursuant to this Honorable Court's order dated March 31, 2023:

I.

Plaintiff re-alleges all of the allegations contained in the original petition for damages as

if copied in extenso herein and hereby amends the original petition to read exactly as follows:

Parties

1.

A.   *The Plaintiff is:*

   **i.**   KEN WILLIAMS, (hereinafter "MR. WILLIAMS") individually and a major residing at

      1030D Sosthene Guilbeau, Breaux Bridge, Louisiana, ST. MARTIN Parish.

B.   *The Defendants are:*

   **i.**   EXXON MOBIL CORPORATION (hereinafter "EXXON"), a foreign corporation

      incorporated in New Jersey and with its principal place of business in Texas, business

      establishment in Louisiana in Baton Rouge, Louisiana, and whose agent for service of

process is Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, Louisiana

70802;

ii.    MOTIVA ENTERPRISES, LLC (hereinafter "MOTIVA"), a TEXAS corporation, with

its principal business office in TEXAS, and whose mailing address is P.O. BOX 4540,

HOUSTON, TEXAS 77210 and whose agent for service of process is CT

CORPORATION SYSTEM, 3867 PLAZA TOWER DRIVE, BATON ROUGE,

LOUISIANA 70816;

iii.    ADA   CARBON   SOLUTIONS   (RED   RIVER),   LLC,

(hereinafter substituting itself in place of "VORTEX

OPERATIONS" as it was incorrectly named throughout the

original petition and who should hereinafter be referred to

as   "RED   RIVER")   a   Colorado   Corporation,   with   its

principal business office in Colorado, and whose mailing

address is 8051 E. Maplewood Avenue, Greenwood Village,

Colorado 80111, and whose agent for service of process is

Universal Registered Agents, 3500 Hwy 190, Suite 220,

Mandeville, LA 70471 (the same having been previously

referred   to   as   "ADA   CARBON   SOLUTIONS   (VORTEX

OPERATIONS),   LLC"   in   Plaintiff's   previously   filed

Original Petition;

iv.    VALERO REFINING- NEW ORLEANS, LLC, (hereinafter "VALERO") a TEXAS

Limited Liability Company, with its principal business office in TEXAS, and whose

mailing address is Attn: Corporate Tax, PO Box 696000, San Antonio, Texas 78269 and

whose agent for service of process is CT CORPORATION SYSTEM, 3867 PLAZA

TOWER DRIVE, BATON ROUGE, LOUISIANA 70816;

v.    PLACID   REFINING   COMPANY,   LLC,   (hereinafter

"PLACID   REFINING")   a   Delaware   Limited   Liability

Company,   whose   mailing   address   is   2101   Cedar   Springs

Road,   Suite   600,   Dallas,   Texas   75201,   and   whose   agent   for

service of process is CT CORPORATION SYSTEM, 3867 PLAZA TOWER DRIVE, BATON ROUGE, LOUISIANA 70816;

vi.    PLACID PIPELINE COMPANY, LLC, (hereinafter "PLACID PIPELINE") a Delaware Limited Liability Company, whose mailing address is 2101 Cedar Springs Road, Suite 600, Dallas, Texas 75201, and whose agent for service of process is CT CORPORATION SYSTEM, 3867 PLAZA TOWER DRIVE, BATON ROUGE, LOUISIANA 70816;

vii.    SHELL USA, INC. (hereinafter "Shell"), a Delaware Corporation, with its Mailing address being 150 N. Dairy Ashford, Houston, Texas 77079, and whose registered agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816 (the same having been previously referred to in Plaintiff's Original Petition as "SHELL OIL COMPANY");

viii.    CITGO    PETROLEUM    CORPORATION    (hereinafter "CITGO") a Delaware Corporation, whose principal place of business being located in Texas, having a principal business establishment in Lake Charles, Louisiana, and whose registered agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

ix.    INTERNATIONAL-MATEX TANK TERMINALS, LLC (hereinafter "IMTT") a foreign corporation, with its principal place of business in North Carolina, and whose principal business establishment is located at 400 POYDRAS STREET, SUITE 3000, New Orleans, Louisiana 70130, and whose registered agent for service of process is   CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

x.    TAMINCO US, LLC, St. Gabriel Plant, (hereinafter "EASTMAN") a Delaware Corporation, with its local principal business office being located at 200 South

Wilcox Drive, Kingsport, Tennessee 37660, and whose registered agent is United Agent Group, Inc., 1070-B West Causeway Approach, Mandeville, LA 70471;

xi.  THE DOW CHEMICAL COMPANY, (hereinafter "DOW"), a foreign company, domiciled in Delaware, with their local Registered Office being at 3867 Plaza Tower Drive, Baton Rouge, LA 70816, and whose reg. agent for service of process being CT CORPORATION SYSTEM, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

xii.  MARATHON PETROLEUM COMPANY, LP (hereinafter "MARATHON") a foreign company, authorized to do and doing business in Louisiana, domiciled in Delaware, with its principal place of business in Ohio, its principal place of business in Louisiana in East Baton Rouge Parish, and whose registered agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

xiii.  BOARDWALK PETROCHEMICAL PIPELINE COMPANY, in Venice, Louisiana, (formerly known as CHEVRON PETROCHEMICAL PIPELINE COMPANY, LLC, and hereinafter "CHEVRON PIPE LINE") A Delaware Company, with its Domicile address being 251 Little Falls Drive, Wilmington, Delaware 18808, and whose principal place of business is located at 6001 Bollinger Canyon Road, San Ramon, California 94583, and whose registered agent for service of process is The Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, LA 70802;

xiv.  APACHE OIL COMPANY, INC., in Johnson Bayou, (hereinafter "APACHE") a Delaware Corporation, with its local principal business establishment being 5615 Corporate Blvd, Suite 400B, Baton Rouge, Louisiana, and whose registered agent for service of process is CT Corporation

4

System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

xv.    CONOCO PHILLIPS COMPANY, in Westlake, (hereinafter "CONOCOPHILLIPS") a Delaware Company, with its principal business office located at 925 North Eldridge Parkway, Houston, Texas 77079, and whose registered agent is United States Corporation Company, 501 Louisiana Avenue, Baton Rouge, LA 70809;

xvi.    TURNER INDUSTRIES GROUP, LLC (hereinafter "TURNER"), a domestic corporation, with its principal place of business located at 8687 United Plaza Boulevard, Baton Rouge, Louisiana 70809 and at all times material hereto, licenses to do and doing business in the State of Louisiana whose registered agent for service of process is John H. Fenner, III, 8687 United Plaza Boulevard, Baton Rouge, LA 70809;

xvii.    THIRD COAST OFFSHORE SEACREST, LP (hereinafter "ENBRIDGE" as it was formerly known as "ENBRIDGE OFFSHORE PIPELINES (SEACREST), LP), a foreign corporation, with its principal place of business located at 1501 McKinney Street, Suite 800, Houston, Texas 77010, and whose registered agent for service of process is COGENCY GLOBAL, INC., located at 4459B Bluebonnet Blvd, Baton Rouge, LA 70809; and

xviii.    STOLTHAVEN NEW ORLEANS, LLC (hereinafter "STOLTHAVEN"), a domestic corporation authorized to do and doing business in Louisiana with its principal business office in BRAITHWAITE, Louisiana, and whose agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

2.

Plaintiff specifically alleges that exposure to benzene and benzene containing products, in combination with other benzene-containing products, caused his benzene-related injuries including but not limited to CHRONIC LYMPHOCYTIC LEUKEMIA (CLL), which Plaintiff was first diagnosed with on September 30, 2022. Venue is proper for the Defendants and is proper for all Defendants pursuant to Louisiana Code of Civil Procedure Articles 42(2), 42(4) and 73. Defendants, EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID

PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, ENBRIDGE and CARGILL are foreign corporations with their principal business establishment in Louisiana, making venue proper pursuant to La. C.C.P. art. 42(4). Furthermore, Defendants TURNER AND STOLTHAVEN are domestic corporations incorporated in Louisiana with their principal office in East Baton Rouge Parish. Plaintiff, Ken Williams was exposed to products, distributed, manufactured, sold, installed or removed by the above-referenced Defendants. Venue is proper in East Baton Rouge Parish because the Defendants are doing business in East Baton Rouge Parish. Plaintiff specifically alleges that these products, in combination with other benzene-containing products, caused his CHRONIC LYMPHOCYTIC LEUKEMIA. Thus, venue is proper for these Defendants, as joint and solidary obligors and is proper for all Defendants pursuant to Louisiana Civil Code of Procedure Articles 42 and 73.

3.

MR. WILLIAMS worked from 2000 till present for Petroleum Service Corporation ("PSC"), BILFINGER, INC. ("BIS") CASEY & SONS, LLC ("CASEY") and ECS of RESERVE ("ECS") from 2000 till present as a Tankerman, Hydroblaster, sandblaster, and painter EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN. While working at/or around these businesses, MR. WILLIAMS had hands on exposure to benzene. In addition to the aforementioned jobs wherein MR. WILLIAMS came into contact with benzene, he also cleaned his hands with gasoline. MR. WILLIAMS would also frequently and regularly come into contact with benzene and benzene-containing products from substances such as crude oil, gasoline, diesel, pure benzene, and natural gas.

4.

MR. WILLIAMS was employed by PSC (from 2006-2007 and 2021-present), BIS (from 2007-2015), and CASEY & SONS, LLC (from 2004-2006), a contractor as a tankerman, hydroblaster, sandblaster or painter from 2000 till present, wherein he was also exposed to high levels of benzene from products manufactured, distributed, or sold by the defendants and

6

contracted workers performing various tasks throughout the units within the normal operations and while new construction, add-ons, and turnarounds occurred at these facilities. He was exposed to hazardous benzene, toluene, xylene, gasoline, crude oil and mineral spirits among other benzene containing substances.

5.

From 2000 through 2022, MR. WILLIAMS would regularly come into contact with benzene or benzene-containing products (e.g., crude oil, toluene, xylene, natural gas, natural gas condensate, hexane, diesel, jet fuel, gasoline and benzene, and Liquid Wrench) by defendants. MR. WILLIAMS was diagnosed with CLL on September 30, 2022 due to his exposure to benzene and benzene-containing products. He filed this suit within one year of learning of the connection between his CLL and benzene.

6.

MR. WILLIAMS was significantly exposed to benzene and benzene-containing products as a result of the acts and/or omissions of the Defendants, which were a substantial contributing cause to MR. WILLIAMS's CHRONIC LYMPHOCYTIC LEUKEMIA.

7.

While working at/or around EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN for contractors such as PSC (from 2006-2007 and 2021-present), BIS (from 2007-2015), CASEY & SONS, LLC (from 2000-2004), and ECS (from 2004-2006), as a tankerman, hydroblaster, sandblaster, and painter, MR. WILLIAMS was exposed daily to high levels of benzene while performing his duties as a tankerman, hydroblaster, sandblaster, and painter among other tasks performed during regular operations and during add-ons, tie-ins, expansions, turnarounds, and new construction jobs at the defendants' facility. He was also exposed to high levels of benzene from products manufactured, distributed, or sold by the defendants.

8.

When working as a tankerman, hydroblaster, sandblaster, insulator, scaffold builder, maintenance man and/or painter at EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN, MR. WILLIAMS worked with and near Turner Industries Group, LLC and its predecessors including Nichols Construction, International Maintenance Corporation (IMC) and Harmony, LLC. Turner Industries Group, LLC has a history of exposing employees and bystanders of different trades to benzene and benzene-containing products.

8.1

MR. WILLIAMS was employed by PSC CONSTRUCTION, LLC (hereinafter referred to as "PSC") and WATERWORKS, LLC as a Tankerman, Hydroblaster, Sandblaster, Painter, Insulator and Maintenance Man from 2005-2007 at EXXON, MR. WILLIAMS worked at the Baton Rouge facility.

8.2

MR. WILLIAMS was employed by Utility Service and Maintenance, Inc. (hereinafter referred to as "USM") as a Tankerman, Hydroblaster, Sandblaster, Painter, Maintenance Man from 2016-2018 at MOTIVA, MR. WILLIAMS worked at the Norco facility.

8.3

MR. WILLIAMS was employed by SUNBELT CONTRACTORS, LLC, as a Painter and Maintenance Man from 2010-2012 at RED RIVER, MR. WILLIAMS worked at the Coushatta facility.

8.4

MR. WILLIAMS was employed by USM as a Hydroblaster, Painter and Maintenance Man from 2016-2018 at VALERO, MR. WILLIAMS worked at the Norco facility.

8.5

MR. WILLIAMS was employed by PSC as a Tankerman, Hydroblaster and Maintenance Man from 2005-2007 at PLACID REFINING, MR. WILLIAMS worked at the Port Allen facility.

8.6

8

MR. WILLIAMS was employed by PSC as a Tankerman, Hydroblaster and Maintenance Man from 2005-2007 at PLACID PIPELINE, MR. WILLIAMS worked at the Port Allen facility.

8.7

MR. WILLIAMS was employed by USM as a Hydroblaster, Painter and Maintenance Man from 2016-2018 at SHELL, MR. WILLIAMS worked at the Norco facility.

8.8

MR. WILLIAMS was employed by PSC as a Tankerman, Hydroblaster, Painter and Maintenance Man from 2005-2007 at CITGO, MR. WILLIAMS worked at the Sulphur facility.

8.9

MR. WILLIAMS was employed by USM as a Tankerman, Hydroblaster, Sandblaster, Painter and Maintenance Man from 2016-2018 at IMTT, MR. WILLIAMS worked at the St. Rose facility.

8.10

MR. WILLIAMS was employed by PSC as a Tankerman, Hydroblaster and Maintenance Man from 2005-2008 at DOW, MR. WILLIAMS worked at the Plaquemine facility.

8.11

MR. WILLIAMS was employed by MASTER VAC INDUSTRIAL SERVICES, LLC, as a Tankerman, Hydroblaster and Maintenance Man from 2020-2022 at EASTMAN, MR. WILLIAMS worked at the Geismar facility.

8.12

MR. WILLIAMS was employed by PSC as a Tankerman, Hydroblaster and Maintenance Man from 2019-2022 at CHEVRON PIPE LINE, MR. WILLIAMS worked at the Boothville-Venice facility.

8.13

MR. WILLIAMS was employed by BIS as a Sandblaster, Painter and Maintenance Man from 2003-2010 at APACHE, MR. WILLIAMS worked at the Johnson's Bayou facility.

8.14

MR. WILLIAMS was employed by PSC as a Tankerman, Hydroblaster and Maintenance Man from 2004-2006 at CONOCO PHILLIPS, MR. WILLIAMS worked at the Lake Charles facility.

8.15

MR. WILLIAMS was employed by ECS as a Sandblaster, Painter and Maintenance Man from 2002-2005 at MARATHON, MR. WILLIAMS worked at the Garyville facility.

8.16

MR. WILLIAMS worked around TURNER employees while working at various facilities in between 2000 and 2023.

8.17

MR. WILLIAMS was employed by CASEY & SONS, LLC as a Sandblaster, Painter and Maintenance Man from 2000-2002 at STOLTHAVEN, MR. WILLIAMS worked at the Braithwaite facility.

8.18

MR. WILLIAMS was employed by BIS at ENBRIDGE OFFSHORE (SEACREST) PIPELINES, LLC (hereinafter referred "ENBRIDGE") now known as THIRD COAST OFFSHORE SEACREST, LP, as a Hydroblaster, Sandblaster, Painter, Scaffold Builder and Maintenance Man from 2008-2010, MR. WILLIAMS worked at the Centerville facility.

9.

From 2000 through present, MR. WILLIAMS would regularly come into contact with benzene or benzene-containing products (e.g., toluene, xylene, benzene) manufactured, sold, distributed, used by defendants, EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN, which caused his injuries including CLL.

10.

At all material times herein, defendants were manufacturers, distributors, sellers, suppliers, or large industrial consumers of benzene and/or benzene-containing products.

10.1

10

While working at the facilities listed above in paragraphs 8 through 8.18, from 2000 through 2023, MR. WILLIAMS was exposed daily to high levels of benzene when setting up equipment, installing and removing, repairing equipment, and other duties while performing turnarounds, and working on new construction jobs at the defendant's facilities. He was also exposed to high levels of benzene from products manufactured, distributed or sold by the defendants.

11.

MR. WILLIAMS sustained tissue damage shortly after each exposure to benzene, resulting in distinct bodily injuries in each year from approximately 2000 through present. As a direct and proximate result of exposure to benzene and products containing high levels of benzene, MR. WILLIAMS has suffered injuries, including but not limited to CLL, physical damage, severe physical and mental pain, fear of future disease processes, disability, medical expenses, lost wages, and loss of enjoyment of life. He will continue to suffer these damages in the future.

12.

The health hazards of benzene have been recognized for over one hundred years. Benzene has been recognized as a carcinogen known to cause leukemia. By the end of 1948, it was widely known to those in defendants' industry in the United States, as well as the named defendants or their predecessors, that exposure to benzene could cause a myriad of ill health effects including such diseases as leukemia, multiple myeloma, chronic lymphocytic leukemia, lymphoma and other blood disorders.

13.

Through industry and medical studies unknown to Plaintiff, the defendants knew or should have known of the health hazards inherent in the products they manufactured, distributed, sold, supplied, owned, transported, or used. The actions or inactions of the defendants constitute gross negligence and demonstrate a reckless disregard for the rights and safety of others.

14.

During his work for the Defendants, MR. WILLIAMS was exposed to hazardous crude oil, diesel fuel, leaks, gasoline, solvents, xylene, and natural gas, and natural gas condensate.

15.

CLL is a malignant disease that affects the blood and bone marrow.

16.

The development of CLL as a result of chronic benzene exposure has been well documented by scientists, and death resulting from leukemia has been associated with benzene exposure. Scientists have also linked Multiple Myeloma, CHRONIC LYMPHOCYTIC LEUKEMIA (CLL), aplastic anemia, pancytopenia, cytopenias, myelofibrosis, and polycythemia vera to benzene exposure.

17.

Practically all of the adverse chronic effects of exposure to benzene and its oxidation products are a result of their influence on the blood forming system. The adverse impact of exposure to levels of benzene has been known to range from less than five years to in excess of thirty years.

18.

Exposure to benzene is usually through inhalation, although skin contact also occurs. Chronic benzene poisoning results from repeated or continuous exposure to relatively low concentrations of benzene vapors.

19.

Long-term benzene exposure may also adversely impact marrow and bone production. Breathing benzene can cause drowsiness, dizziness, rapid heart rate, headaches, tremors, confusion, and unconsciousness. Breathing very high levels of benzene can also result in death. Eating or drinking foods containing high levels of benzene can cause vomiting, irritation of the stomach, dizziness, sleepiness, convulsions, rapid heart rate, and death.

20.

In the September 1948 edition of the American Petroleum Institute, Toxicological Review, the authors recommended precautionary measures for workers who are exposed to benzene. Furthermore, they stated that benzene use was extensive in the petroleum industry with the greatest amount of benzene blended into motor gasoline. As of 1948, the American Standards Association and most states had set an arbitrary limit of 100 ppm as the maximum permissible benzene

12

concentration for workers exposed to this substance during an 8-hour day. In as much as the body develops no tolerance to benzene, and as there is a wide variation to individual susceptibility, it is generally considered that the only absolute safe concentration for benzene is zero. The concentration of benzene vapor in the air should be checked regularly in situations where excessive exposures are apt to be encountered.

21.

The safety measures necessary for the prevention of benzene poisoning are primarily those designed to prevent the inhalation of benzene vapor. Ventilation should be designed to prevent toxic concentrations of the vapor from reaching the breathing zone of individuals who may be potentially exposed. Individuals who must be exposed to benzene vapor should be rotated to reduce their exposure time to a minimum. When excessive concentrations are unavoidably encountered in operations—such as the cleaning of tank cars, vats, and storage tanks—air masks should be employed. Skin contact and possible dermatitis from benzene should be avoided entirely if possible; but, if the hands must contact the solvent, then neoprene gloves or protective creams should be used.

22.

The defendants EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN, knew or should have known about the causal relationship between benzene and cancer-related illnesses, and knew or should have known the benzene and benzene containing products to which MR. WILLIAMS was exposed contained dangerous levels of benzene which posed a health hazard to users and those in close proximity to these products. The defendants failed to warn MR. WILLIAMS about the health hazards associated with benzene.

23.

The defendants are guilty of negligence, gross-negligence, strict liability, and fault identified throughout this complaint, more specifically as follows:

PREMISE LIABILITY CLAIMS AGAINST EXXON, MOTIVA, RED RIVER, VALERO,

PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN

24.

Defendant, EXXON, has been the operator and/or the manager and/or the owner and occupier of its BATON ROUGE facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's Baton Rouge facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

25.

Defendant, MOTIVA, has been the operator and/or the manager and/or the owner and occupier of its NORCO facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's Norco facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

26.

Defendant, RED RIVER, has been the operator and/or the manager and/or the owner and occupier of its facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at

14

the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

27.

Defendant, VALERO, has been the operator and/or the manager and/or the owner and occupier of its NORCO facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

28.

Defendant, PLACID REFINING, has been the operator and/or the manager and/or the owner and occupier of its PORT ALLEN facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

29.

Defendant, PLACID PIPELINE, has been the operator and/or the manager and/or the owner and occupier of its facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

30.

Defendant, SHELL, has been the operator and/or the manager and/or the owner and occupier of its NORCO facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

31.

Defendant, CITGO, has been the operator and/or the manager and/or the owner and occupier of its LAKE CHARLES facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

32.

Defendant, IMTT, has been the operator and/or the manager and/or the owner and occupier of its ST. ROSE facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

33.

Defendant, DOW, has been the operator and/or the manager and/or the owner and occupier of its Plaquemine facility and in custody of the facility during the relevant time period. The facility

16

was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

34.

Defendant, MARATHON has been the operator and/or the manager and/or the owner and occupier of their GARYVILLE facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

35.

Defendants, EASTMAN have been the operators and/or the managers and/or the owners and occupiers of their Geismar facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

36.

Defendant, CHEVRON PIPE LINE, has been the operator and/or the manager and/or the owner and occupier of its facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at

the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

37.

Defendant, APACHE, has been the operator and/or the manager and/or the owner and occupier of its Johnson Bayou facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises, where he was present. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

38.

Defendant, CONOCO PHILLIPS, has been the operator and/or the manager and/or the owner and occupier of its Lake Charles facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

39.

Defendant, MARATHON, has been the operator and/or the manager and/or the owner and occupier of its Garyville facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he

was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

41.

Defendant THIRD COAST OFFSHORE SEACREST, LLC has been the operator and/or the manager and/or the owner and occupier of its Centerville facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

42.

Defendant STOLTHAVEN, has been the operator and/or the manager and/or the owner and occupier of its Braithwaite facility and in custody of the facility during the relevant time period. The facility was defective in that the benzene and benzene containing materials in the facility created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene containing materials while he was an invitee at the Defendant's facility. The defective condition of the facility was a proximate cause of MR. WILLIAMS's benzene related injuries and damages.

43.

Defendants, EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN are liable to MR. WILLIAMS for their failure to exercise reasonable care to protect MR. WILLIAMS from the foreseeable dangers associated with exposure to benzene. The Defendants, as the premise operator and/or manager and/or owner and occupier, and/or custodian, had a non- delegable duty to keep the premises safe for invitees. The Defendants knew or should have known of the unreasonable risk of harm inherent in exposure to benzene and benzene containing materials but failed to protect

MR. WILLIAMS from said risk or harm. EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN failed to warn and to exercise reasonable care when MR. WILLIAMS entered its premise. EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN managed the benzene containing products, performed maintenance.

44.

Exposure to benzene from the defendants' respective products and/or products under their care, custody, and control resulted from the normal, foreseeable, and intended use of the products, without substantial change in the condition in which the defendants sold or supplied these products.


45.

The defendants' respective products were defective, presented an unreasonable risk of harm, and were unreasonably dangerous under normal use at the time the products left the respective defendants' control. MR. WILLIAMS was an intended and foreseeable user of the alleged defective products, and defendants could reasonably have anticipated the losses to the plaintiff.

46.

The defects in the defendants' respective products include, but are not limited to, the following:

    **a.** inherent characteristics (known to the defendants) that gave the products such a potential for causing health problems as to render the products unreasonably dangerous per se;

    **b.** lack of warnings or lack of sufficient warnings of the inherently dangerous properties of the products when used in the fashion in which they were anticipated or should have been anticipated being used;

**c.**     lack of warnings or lack of sufficient instructions for eliminating the health risks inherent in the use of the products;

**d.**     lack of sufficient inspections by the defendants of their products to ensure that such products contained sufficient warnings of the dangerous properties of the products;

**e.**     lack of reasonable inspections by the defendants of their products to ensure that such products contained sufficient instructions for eliminating or minimizing the health risks inherent in the use of the products;

**f.**     lack of tests or lack of sufficient tests to determine the effect of benzene vapors on intended users and bystanders; and

**g.**     other acts which may be revealed at the trial of this matter.

47.

The defendants used and sold products with conscious disregard for the safety of users of the products and other persons who might be injured thereby.

48.

As a result of the unreasonably dangerous condition and composition of the benzene-containing products manufactured, distributed, and/or sold by defendants EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN, wherein MR. WILLIAMS inhaled benzene fumes and other harmful substances emitted by the normal use of the products. The defective condition of the defendants' products proximately caused or substantially contributed to plaintiff's injuries or damages as described elsewhere herein.

49.

Defendants, EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN, are liable for the damages caused by their unreasonably dangerous products because (1) the product

21

is unreasonably dangerous in construction and composition, (2) the product is unreasonably dangerous in design, and (3) the product is unreasonably dangerous because an adequate warning about the product was not provided.

50.

The Defendants EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN breached their respective duties, which they owed to MR. WILLIAMS to exercise proper care in manufacturing and selling their respective products. More specifically, they breached the following duties:

a.  to design their products to contain available and suitable products other than benzene;

b.  to sell benzene-free products;

c.  to select materials other than benzene for inclusion into their products;

d.  to fully test their respective products for health risks associated with the normal and intended use of their products;

e.  to fully instruct and warn users and bystanders in the uses of their respective products so as to eliminate or reduce the health hazards associated with their normal and intended uses;

f.  to fully warn foreseeable users and bystanders as additional medical knowledge became available concerning the health hazards associated with their products;

g.  to recall their products upon discovering, or at the time they should have discovered, the health hazards associated with those products;

h.  to inspect fully and adequately the design, selection, testing, instruction and warnings that should have accompanied the sale of such products;

i.  to refrain from negligently misrepresenting the safety and health risks of the products they sold;

j.  to inquire about or investigate the safety and health risks of the products they sold;

k.  to research, study and be aware of medical and scientific studies concerning the health hazards of benzene; and

l.  any other acts which may be revealed at the trial of this matter.

51.

As a direct and proximate result of the defendants' breach of their respective duties, the plaintiff has sustained injuries, damages, and losses. The defendants' breaches of their duties directly and proximately caused the injuries to the plaintiff.

NEGLIGENCE AND GROSS NEGLIGENCE BY EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN

52.

Defendants are liable to Plaintiff for the damages caused by their negligence pursuant to La. C.C. 2315 provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

a.

Defendants EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN have a duty to act with reasonable care to avoid injury to another.

b.

Defendants EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN were the premise owners during the time periods identified above, and therefore had a duty to provide a safe workplace during these periods of employment.

c.

Defendants, knew or should have known through industry and medical studies, the existence of which were unknown to the Plaintiff, of the health hazards inherent in the benzene and benzene-containing products and materials used by EXXON, MOTIVA, RED RIVER,

23

VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN .

53.

EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN have a duty to act with reasonable care to avoid injury to another. Defendants were the premise owners during the time periods identified above, and therefore had a duty to provide a safe workplace during these periods of employment. Defendants breached their duties to MR. WILLIAMS in the manner described above EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN substandard conduct, described above, caused MR. WILLIAMS' exposure to benzene and were each a substantial factor in contributing to Plaintiff's injuries.

54.

In the course of his work at EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN , MR. WILLIAMS was exposed to benzene and benzene containing products at all material times which were owned and/or operated and/or supervised by EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN  failing to provide adequate warnings, including placards and signs, physical examinations, safety equipment, ventilation, and breathing apparatus, where such was necessary in order to prevent MR. WILLIAMS from being harmed by exposure to benzene in the environment where MR. WILLIAMS was required to work;

24

a.  failing to make certain that contract workers including MR. WILLIAMS, were provided a safe working environment free from benzene exposure;

b.  negligently or intentionally failing to comply with the applicable State and Federal regulations regulating workplace exposure to benzene;

c.  failing to provide MR. WILLIAMS with a safe place to work;

d.  failing to conduct adequate industrial hygiene monitoring of workers such as MR. WILLIAMS; and

e.  any and all other acts of negligence or other acts of fault which may be proven at trial.

55.

EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN, or their predecessors-in- interest, subsidiaries, or successors-in-interest, individually and/or in concert, breached their duty of ordinary care to MR. WILLIAMS by negligently performing duties owed individually and/or delegated to them, directly and proximately causing the benzene related injuries, illnesses, and disabilities of MR. WILLIAMS. The Defendants and/or its predecessors-in-interest, subsidiaries, or successors-in-interest were negligent in one, some and/or all of the following respects, among others, the same being the proximate cause of MR. WILLIAMS' benzene related injuries, illnesses and disabilities:

a.  in failing to provide adequate safety equipment;

b.  in failing to protect MR. WILLIAMS from any benzene exposure;

c.  in failing to provide MR. WILLIAMS sufficient personal protective equipment, safety devices and work procedures intended to prevent or substantially eliminate the effects of benzene exposure;

d.  in failing to supervise or insure compliance with safety guidelines concerning exposure to benzene or benzene containing products;

e.  in failing to use or misusing equipment and instrumentalities within their control which were intended to minimize MR. WILLIAMS' exposure to benzene;

f.  in failing to properly perform safety inspections of MR. WILLIAMS' workplace;

**g.**    in failing to properly perform engineering services, consulting and direction of work involving the installation, removal, maintenance and/or disturbance of equipment at MR. WILLIAMS' work sites;

**h.**    in failing to comply with applicable State and Federal regulations regarding workplace exposure to benzene; and in failing to properly perform or direct the opening of equipment that contained benzene at MR. WILLIAMS' work sites; and

**i.**    in negligently failing to disclose, warn or reveal medical and safety information to MR. WILLIAMS regarding the hazards of benzene.

The negligence and substandard conduct of Defendants was a substantial factor and contributed in causing MR. WILLIAMS' benzene related injuries and damages.

NEGLIGENCE AND GROSS NEGLIGENCE BY TURNER

56.

Turner Industries Group, LLC and its predecessors including, Nichols Construction, IMC and Harmony, LLC ("herein after Turner") was negligent in the construction, and design of new construction jobs and turnaround work performed at defendants' facilities from 2000 through present. At all relevant times, Turner has been either the contractor or subcontractor of construction work performed at the respective facility and in custody and control of the work performed at the facility. The activities conducted by Turner included, but were not limited to, the demolition, construction, rebuilding, renovations, additions tie-ins and expansions of the facilities for the premise owners.

57.

The construction was defective in that the benzene and benzene-containing materials released in the facilities created an unreasonable risk of harm to MR. WILLIAMS and other persons on the premises. MR. WILLIAMS was exposed to benzene and benzene-containing materials while he was an invitee at the premise Defendants' facilities. The defective condition of the construction at the facilities was a proximate cause of MR. WILLIAMS' benzene related injuries and damages.

58.

Turner knew or should have known of the unreasonable risk of harm inherent in exposure to benzene and benzene containing materials, but failed to protect MR. WILLIAMS from said risk of harm. The Defendants' failure to protect MR. WILLIAMS from known and/or

foreseeable dangers constitutes negligence. Said negligence was a proximate cause of MR. WILLIAMS' benzene related injuries and damages.

STRICT LIABILITY AGAINST TURNER

59.

MR. WILLIAMS' CLL was caused by an unreasonably defective thing that was within the defendants' care, custody or control, namely, benzene and benzene-containing products. Turner, as successor in interest to Nichols Construction, IMC and Harmony, is strictly liable for MR. WILLIAMS' exposure to benzene because the construction jobs at defendants' facilities that released benzene to which he was exposed were in the care and custody of Turner. The benzene and benzene- containing products released on the construction jobs at defendants' facilities which exposed MR. WILLIAMS were defective or were in a condition which created an unreasonable risk of harm and MR. WILLIAMS' CLL was caused by the defective condition.

60.

Additionally, as construction contractors at defendants' facilities and other facilities where MR. WILLIAMS was exposed to benzene, Turner is strictly liable for the Plaintiff damages arising from the custody or guard of the construction jobs. Because Turner caused MR. WILLIAMS to suffer benzene exposures from 2000 through present at defendants' facilities while former Article 2317 of Louisiana Civil Code was still in effect, it governs here. Pursuant to La. Civil Code art. 2317:

> Art. 2317. Acts of others and of things in custody.
> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody..."

Pursuant to La. Civil Code Art. 2317.1. Turner is liable for MR. WILLIAMS' injuries. Plaintiff's injuries were caused by a vice or defective thing; namely, the benzene containing products released in the construction jobs that were under the care, custody, supervision, and control of defendants (as described above).

61.

Turner negligently performed the foregoing activities in the following non-exclusive particulars:

    a. By creating a work environmental laden with benzene and an unhealthy and unsafe place for MR. WILLIAMS to work;

    b. By failing to provide warnings or adequate warnings, to MR. WILLIAMS of the dangers and risks posed by the benzene release in the atmosphere in which MR. WILLIAMS worked, in disregard of the need for correct, adequate, and/or appropriate safety equipment, in disregard of critical medical and safety information regarding benzene hazards in general and of hazards at the jobsite in particular; and of the hazards created by Defendant's activities;

    c. By failing to test, or adequately test, the work environment for the presence of toxic, hazardous and carcinogenic chemicals, particularly benzene;

    d. By failing to formulate policies and adopt plans, procedures, and supervision necessary for the adequate protection of persons, such as MR. WILLIAMS who came into contact with benzene as a result of Defendant's activities;

    e. By recklessly concealing from MR. WILLIAMS and negligently failing to provide medical and safety information to MR. WILLIAMS regarding the safety and health risk associated with benzene and benzene containing products;

    f. By failing to adopt and/or failing to enforce safety rules after such safety rules were actually adopted;

    g. By failing to keep abreast of the scientific and engineering knowledge regarding the danger of, and protection against, occupational exposure to benzene;

    h. By failing to properly supervise and/or monitor their work areas for compliance with safety regulations;

    i. By failing to supervise their operation and the operations of their subcontractors;

    j. By commencing and continuing operations, which were under their control and supervision when they knew or should have known that such operations would cause MR. WILLIAMS and co-employees to be exposed to benzene without protection, on a daily basis;

    k. By applying, demolishing, displacing, disturbing, fabricating, installing, removing, repairing, replacing, and tearing out products that Defendants knew, or to the exercise of reasonable diligence should have known, were unreasonably dangerous, or unreasonably dangerous per se;

    l. By not providing safety instructions or sufficient safety instructions for eliminating or reducing the health risks associated with their activities; and

    m. By conducting their activities through such other negligent acts or omissions, as may be revealed I discovery and/or at trial.

62.

The foregoing negligent acts of Turner were a cause-in-fact and proximate cause of the Plaintiff's injuries and damages.

63.

Additionally, the contractor defendant is liable for the acts of their subcontractors under the doctrine of respondent superior and Louisiana Civil Code Article 2320.

CONTRA NON VALENTUM

64.

The prescriptive period does not start until the plaintiff knew or should have known that the Plaintiff's CLL was caused by benzene. Here, the results of the plaintiff's exposure to benzene was inherently undiscoverable. The cancer took years to develop.

65.

MR. WILLIAMS did not learn of his diagnosis of CLL until October 25, 2021, and did not learn of a possible connection between the benzene he was exposed to and his illness until after October 25, 2021. The prescriptive period did not start until after October 25, 2021, when the plaintiff learned about the cause of his CLL. The defendants concealed, negligently misrepresented, and misrepresented the health hazards of benzene from the plaintiff, which led Plaintiff to a course of inaction in the enforcement of his right by reason of concealment or misrepresented conduct on the part of the defendants or because of their failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights.

DAMAGES

Compensatory Damages by All Defendants

66.

As a result of the acts and omissions of the defendants, EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN the plaintiff is entitled to recover money damages, both past and future, for all elements of damages allowed by Louisiana law. These damages are, without limitation:

  a. Past, present, and future physical pain and suffering;
  b. Past, present, and future mental anguish and emotional distress;
  c. Disfigurement and embarrassment;
  d. Physical Impairment;
  e. Past and future earnings, fringe benefits, and retirement benefits;
  f. Loss of earning capacity;
  g. Physical and mental disabilities;

   **h.**  Past, present, and future medical care, convalescence, mental and physical therapy and all other health care expenses;

   **i.**  Loss of enjoyment of life;

   **j.**  Fear of cancer and other diseases;

   **k.**  Expenses to train, educate or otherwise enable the Plaintiff to be gainfully employed;

   **l.**  Interests and costs;

   **m.**  any other damages to be revealed at the trial of this matter.

67.

Additionally, the contractor defendants are liable for the acts of their subcontractors under the doctrine of respondeat superior and Louisiana Civil Code Article 2320.

68.

MR. WILLIAMS was exposed to benzene on a daily basis during his borrowed employment with Defendants EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN.

69.

Defendants EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN knew or should have known through industry and medical studies, the existence of which were unknown to the Plaintiff, of the health hazards inherent in the dangerous and toxic substances containing benzene produced and used by defendants. Instead of warning MR. WILLIAMS about these dangers, ignored or actively concealed such information.

70.

EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO

PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN through their

negligence failed to provide a safe place for MR. WILLIAMS to work.

71.

All of the allegations contained in the previous paragraphs are realleged herein. Each of

the defendants knew or should have known that its individual actions would combine to cause the

injuries of the plaintiff. The actions of each of the defendants are a proximate cause of plaintiff's

injuries. As a result, all defendants are jointly and solidarily liable for the damage caused by their

combined actions.

72.

Defendants, EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID

PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE,

CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN, were

negligent in the following illustrative, but not exclusive, particulars:

   a. failing to warn its contract workers regarding the health hazards associated with exposure to benzene and benzene containing products;

   b. failing to provide special work clothes which could be removed at the end of the work day, which would not require home laundering;

   **c.** failing to provide showers at the workplace to enable their contract workers to clean off all benzene containing products from their person before returning home;

   **d.** failing to advise contract workers that benzene is an extremely dangerous substance which, even in small quantities, could cause cancer;

   e. failing to implement adequate engineering controls to eliminate or substantially reduce their contract workers' exposure to benzene;

   f. failing to use benzene-free products;

   g. failure to totally isolate any work activity involving the application, construction, removal, handling or cleaning up of any equipment so as to prevent exposure to benzene by contract workers;

   h. failure to provide inspection, approval and supervision of the work of MR. WILLIAMS, his co-employees and other contract workers;

   i. to see that proper safety rules were adopted, promulgated and enforced concerning the use of respiratory protection devices;

   j. to see that MR. WILLIAMS, his co-employees, and other contractor workers performed the duties pertaining to their work in a proper, safe and workmanlike manner;

31

k. to see that MR. WILLIAMS, his co-employees, and other contract workers used safe and sound principals and practices in their work;

l. to make health and hygiene decisions on any and all questions regarding the use of respiratory protection devices;

m. to keep abreast of state of the art knowledge as it pertains to the dangers of benzene inhalation;

n. to provide adequate warnings, including placards and signs, physical examinations, safety equipment, ventilation, and breathing apparatus, where such was necessary in order to prevent MR. WILLIAMS from being harmed by exposure to benzene in the environment where MR. WILLIAMS was required to work;

o. to make certain that contract workers, including MR. WILLIAMS, were provided a safe working environment free from benzene exposure;

p. negligently or intentionally failing to comply with the applicable State and Federal regulations regulating workplace exposure to benzene;

q. to provide MR. WILLIAMS with a safe place to work;

r. failed to conduct adequate industrial hygiene monitoring of workers such as Mr. White; and

s. any and all other acts of negligence or other acts of fault which may be proven at trial.

DAMAGES

Compensatory Damages by all defendants

73.

As a result of the acts and omissions of the defendants, EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE, AND STOLTHAVEN the Plaintiff is entitled to recover money damages, both past and future, for all elements of damages allowed by Louisiana law. These damages are, without limitation:

a) Past, present, and future physical pain and suffering;

b) Past, present, and future mental anguish and emotional distress;

c) Disfigurement and embarrassment;

d) Physical Impairment;

e) Past and future earnings;

f) Loss of earning capacity;

32

**g)** Physical and Mental Disabilities;

**h)** Past, present, and future medical care, convalescence, mental and physical therapy and all other health care expenses;

**i)** Loss of enjoyment of life;

**j)** Fear of cancer and other diseases;

**k)** Expenses to train, educate or otherwise enable the Plaintiff to be gainfully employed;

**l)** any other damages to be revealed at the trial of this matter.

PRAYER
74.

WHEREFORE, KEN WILLIAMS, individually prays for judgment in favor of Plaintiff and against Defendants EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE and STOLTHAVEN, and that they be duly cited to appear and answer this First Amended Petition for damages and that after due proceedings are had there be judgment rendered herein in the plaintiff's favor and against the defendants, jointly, severally, and in solido, for an amount reasonable under the premises, for all costs of these proceedings, and for all general and equitable relief to which Plaintiff is entitled in a sum to compensate him for his injuries, pain and suffering, as prayed for herein along with all costs plus interest from the date of judicial demand until paid, and all general and equitable relief that may be deemed lawful, just, necessary and proper.

Respectfully Submitted,

**Tregg C. Wilson (#27328)**
**Charles C. Wilson (#13551)**
**Attorney for Petitioner**
**11817 Bricksome Avenue, Suite A**
**Baton Rouge, LA 70816**
**(225) 663-1900**
**tregg@wilsonandwilson.org**

**SHERIFF: PLEASE SERVE BOTH THE ORIGINAL PETITION AND THIS AMENDED PETITION ON DEFENDANTS:**

1) THIRD COAST OFFSHORE SEACREST, LP, through their registered agent for service of process, COGENCY GLOBAL, INC., 4459B Bluebonnet Blvd, Baton Rouge, Louisiana 70809

2) SHELL USA, INC., Through their registered agent for service of process, CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

3) BOARDWALK PETROCHEMICAL PIPELINE, LLC, Through their registered agent for service of process, Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, LA 70802

4) ADA CARBON SOLUTIONS (RED RIVER) LLC, Through their reg. agent for service of process, Universal Registered Agent, 3500 Hwy 190, Suite 220, Mandeville, LA 70471;

5) MOTIVA ENTERPRISES, LLC, through their registered agent for service of process, CT CORPORATION SYSTEM, 3867 PLAZA TOWER DRIVE, BATON ROUGE, LOUISIANA 70816;

6) TAMINCO US, LLC, through their registered agent for service of process, United Agent Group, Inc., 1070-B West Causeway Approach, Mandeville, LA 70471

**Plaintiff will serve the following Defendants via LA CCP Art. 1313:**

7) EXXONMOBIL CORPORATION, through their attorney of record, Alexandra Rossi

8) VALERO REFINING- NEW ORLEANS, LLC, through their attorney of record Hunter Schoen and/or Shelly Howat

9) PLACID REFINING COMPANY, LLC, through their attorney of record Roth M. Hainkel

10) PLACID PIPELINE COMPANY, LLC, through their attorney of record Roth M. Hainkel

11) CITGO PETROLEUM CORPORATION, through their attorney of record Craig Isenberg

12) INTERNATIONAL-MATEX TANK TERMINALS, LLC, through their attorney of record Shannon Kippers, Hillary Brouilette, Scott Minyard Connor Peth, and/or Katherine Cook

13) The DOW Chemical Company, through their attorney of record Amy Maccherone

14) MARATHON PETROLEUM LP, through their attorney of record McCann LeFeve

15) APACHE OIL COMPANY, INC., through their attorney of record Andre Coudrain

16) CONOCO PHILLIPS COMPANY, through their attorney of record Monique Weiner

17) TURNER INDUSTRIES GROUP, LLC, through their attorney of record Andrew Sellers, Jr. and/or John Dale Powers

18) STOLTHAVEN NEW ORLEANS, LLC, through their attorney of record Alan Harrell

CC:  Aaron Greenbaum for RED RIVER

EAST BATON ROUGE PARISH
Filed Jun 08, 2023 11:07 AM
Deputy Clerk of Court

C-724254
32

**19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE**
**STATE OF LOUISIANA**

SUIT NO.:   C-724254

SECTION: 32

**KEN WILLIAMS**

**VERSUS**

**EXXON MOBIL CORPORATION, MOTIVA ENTERPRISES LLC, A D A CARBON SOLUTIONS (RED RIVER) LLC, VALERO REFINING-NEW ORLEANS LLC, PLACID REFINING COMPANY LLC, PLACID PIPELINE COMPANY LLC, SHELL USA, INC., CITGO PETROLEUM CORPORATION, INTERNATIONAL-MATEX TANK TERMINALS LLC, TAMINCO US LLC, THE DOW CHEMICAL COMPANY, MARATHON PETROLEUM COMPANY LP, CHEVRON PIPE LINE COMPANY, APACHE CORPORATION (of DELAWARE), CONOCO PHILLIPS COMPANY, TURNER INDUSTRIES GROUP, LLC, THIRD COAST OFFSHORE SEACREST, LLC, BOARDWALK PETROCHEMICAL PIPELINE, LLC, AND STOLTHAVEN NEW ORLEANS, LLC**

FILED: _____     _____

                                                          **DEPUTY CLERK**

<u>**PLAINTIFF'S SECOND AMENDED PETITION FOR DAMAGES**</u>

The plaintiff, KEN WILLIAMS, through his undersigned attorney, hereby requests leave of court in order to file this Second Amended Petition for Damages, specifically amending said petition to read as follows:

**I.**

Plaintiff re-alleges all of the allegations contained in the first amended petition for damages as if copied in extenso herein and hereby amends Paragraph (1) in the first amended petition to read exactly as follows:

"Parties

1.

A.    *The Plaintiff is:*

i.    KEN WILLIAMS, (hereinafter "MR. WILLIAMS") individually and a major residing at 1030D Sosthene Guilbeau, Breaux Bridge, Louisiana, ST. MARTIN Parish.

B.    *The Defendants are:*

i.    EXXON MOBIL CORPORATION (hereinafter "EXXON"), a foreign corporation incorporated in New Jersey and with its principal place of business in Texas, business

1

establishment in Louisiana in Baton Rouge, Louisiana, and whose agent for service of process is Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, Louisiana 70802;

ii.  MOTIVA ENTERPRISES, LLC (hereinafter "MOTIVA"), a TEXAS corporation, with its principal business office in TEXAS, and whose mailing address is P.O. BOX 4540, HOUSTON, TEXAS 77210 and whose agent for service of process is CT CORPORATION SYSTEM, 3867 PLAZA TOWER DRIVE, BATON ROUGE, LOUISIANA 70816;

iii. ADA CARBON SOLUTIONS (RED RIVER), LLC, (hereinafter substituting itself in place of "VORTEX OPERATIONS" as it was incorrectly named throughout the original petition and who should hereinafter be referred to as "RED RIVER") a Colorado Corporation, with its principal business office in Colorado, and whose mailing address is 8051 E. Maplewood Avenue, Greenwood Village, Colorado 80111, and whose agent for service of process is Universal Registered Agents, 3500 Hwy 190, Suite 220, Mandeville, LA 70471 (the same having been previously referred to as "ADA CARBON SOLUTIONS (VORTEX OPERATIONS), LLC" in Plaintiff's previously filed Original Petition;

iv.  VALERO REFINING- NEW ORLEANS, LLC, (hereinafter "VALERO") a TEXAS Limited Liability Company, with its principal business office in TEXAS, and whose mailing address is Attn: Corporate Tax, PO Box 696000, San Antonio, Texas 78269 and whose agent for service of process is CT CORPORATION SYSTEM, 3867 PLAZA TOWER DRIVE, BATON ROUGE, LOUISIANA 70816;

v.   PLACID REFINING COMPANY, LLC, (hereinafter "PLACID REFINING") a Delaware Limited Liability Company, whose mailing address is 2101 Cedar Springs

Road, Suite 600, Dallas, Texas 75201, and whose agent for service of process is CT CORPORATION SYSTEM, 3867 PLAZA TOWER DRIVE, BATON ROUGE, LOUISIANA 70816;

vi.    PLACID PIPELINE COMPANY, LLC, (hereinafter "PLACID PIPELINE") a Delaware Limited Liability Company, whose mailing address is 2101 Cedar Springs Road, Suite 600, Dallas, Texas 75201, and whose agent for service of process is CT CORPORATION SYSTEM, 3867 PLAZA TOWER DRIVE, BATON ROUGE, LOUISIANA 70816;

vii.   SHELL USA, INC. (hereinafter "Shell"), a Delaware Corporation, with its Mailing address being 150 N. Dairy Ashford, Houston, Texas 77079, and whose registered agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816 (the same having been previously referred to in Plaintiff's Original Petition as "SHELL OIL COMPANY");

viii.  CITGO PETROLEUM CORPORATION (hereinafter "CITGO") a Delaware Corporation, whose principal place of business being located in Texas, having a principal business establishment in Lake Charles, Louisiana, and whose registered agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

ix.    INTERNATIONAL-MATEX TANK TERMINALS, LLC (hereinafter "IMTT") a foreign corporation, with its principal place of business in North Carolina, and whose principal business establishment is located at 400 POYDRAS STREET, SUITE 3000, New Orleans, Louisiana 70130, and whose registered agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

x.     TAMINCO US, LLC, St. Gabriel Plant, (hereinafter "EASTMAN") a Delaware Corporation, with its local

principal business office being located at 200 South Wilcox Drive, Kingsport, Tennessee 37660, and whose registered agent is United Agent Group, Inc., 1070-B West Causeway Approach, Mandeville, LA 70471;

xi.  THE DOW CHEMICAL COMPANY, (hereinafter "DOW"),a foreign company, domiciled in Delaware, with their local Registered Office being at 3867 Plaza Tower Drive, Baton Rouge, LA 70816, and whose reg. agent for service of process being CT CORPORATION SYSTEM, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

xii.  MARATHON PETROLEUM COMPANY, LP (hereinafter "MARATHON") a foreign company, authorized to do and doing business in Louisiana, domiciled in Delaware, with its principal place of business in Ohio, its principal place of business in Louisiana in East Baton Rouge Parish, and whose registered agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;

xiii.  BOARDWALK PETROCHEMICAL PIPELINE COMPANY, in Venice, Louisiana, (formerly known as CHEVRON PETROCHEMICAL PIPELINE COMPANY, LLC, and hereinafter "CHEVRON PIPE LINE") A Delaware Company, with its Domicile address being 251 Little Falls Drive, Wilmington, Delaware 18808, and whose principal place of business is located at 6001 Bollinger Canyon Road, San Ramon, California 94583, and whose registered agent for service of process is The Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, LA 70802;

xiv.  APACHE CORPORATION (OF DELAWARE), in Johnson Bayou, (hereinafter "APACHE") a Delaware Corporation, with its local principal business establishment in Louisiana being 2014 W. PINHOOK RD, SUITE 800,

4

<u>LAFAYETTE, LA 70508, and whose principal business office is 2000 POST OAK BLVD, SUITE 100, HOUSTON, TEXAS 77056, and whose registered agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816;</u>

xv.    CONOCO PHILLIPS COMPANY, in Westlake, (hereinafter "CONOCOPHILLIPS") a Delaware Company, with its principal business office located at 925 North Eldridge Parkway, Houston, Texas 77079, and whose registered agent is United States Corporation Company, 501 Louisiana Avenue, Baton Rouge, LA 70809;

xvi.   TURNER INDUSTRIES GROUP, LLC (hereinafter "TURNER"), a domestic corporation, with its principal place of business located at 8687 United Plaza Boulevard, Baton Rouge, Louisiana 70809 and at all times material hereto, licenses to do and doing business in the State of Louisiana whose registered agent for service of process is John H. Fenner, III, 8687 United Plaza Boulevard, Baton Rouge, LA 70809;

xvii.  THIRD COAST OFFSHORE SEACREST, LP (hereinafter "ENBRIDGE" as it was formerly known as "ENBRIDGE OFFSHORE PIPELINES (SEACREST), LP), a foreign corporation, with its principal place of business located at 1501 McKinney Street, Suite 800, Houston, Texas 77010, and whose registered agent for service of process is COGENCY GLOBAL, INC., located at 4459B Bluebonnet Blvd, Baton Rouge, LA 70809; and

xviii. STOLTHAVEN NEW ORLEANS, LLC (hereinafter "STOLTHAVEN"), a domestic corporation authorized to do and doing business in Louisiana with its principal business office in BRAITHWAITE, Louisiana, and whose agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816."

**II.**

Plaintiff hereby amends Paragraphs (74) in the first amended petition to read exactly as follows:

"PRAYER<br>74.

WHEREFORE, KEN WILLIAMS, individually prays that leave of court be granted in order that this petition may be filed and for judgment in favor of Plaintiff and against Defendants EXXON, MOTIVA, RED RIVER, VALERO, PLACID REFINING, PLACID PIPELINE, SHELL, CITGO, IMTT, DOW, EASTMAN, CHEVRON PIPE LINE, APACHE, CONOCO PHILLIPS, MARATHON, TURNER, ENBRIDGE and STOLTHAVEN, and that they be duly cited to appear and answer this Second Amended Petition for damages and that after due proceedings are had there be judgment rendered herein in the plaintiff's favor and against the defendants, jointly, severally, and in solido, for an amount reasonable under the premises, for all costs of these proceedings, and for all general and equitable relief to which Plaintiff is entitled in a sum to compensate him for his injuries, pain and suffering, as prayed for herein along with all costs plus interest from the date of judicial demand until paid, and all general and equitable relief that may be deemed lawful, just, necessary and proper."

**Respectfully Submitted,**

**Tregg C. Wilson (#27328)**
**Charles C. Wilson (#13551)**
**Attorney for Petitioner**
**11817 Bricksome Avenue, Suite A**
**Baton Rouge, LA 70816**
**(225) 663-1900**
tregg@wilsonandwilson.org